UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| GABRIELLE FIGUEROA and DAISY FRANKLIN, on behalf of Themselves and others similarly situated,<br><br>  Plaintiff,<br><br>-vs-<br><br>EVERALBUM, INC., a Delaware corporation,<br><br>(Serve: Registered Agent<br>   National Registered Agents, Inc.<br>   160 Greentree Drive, Suite 101<br>   Dover, DE  19904)<br><br>  Defendant. | Case No.: 3:17-CV-5909<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Comes now Plaintiffs Gabrielle Figueroa and Daisy Franklin, individually and on behalf of others similarly situated, by and through counsel, and pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure file this Class Action Complaint.  For their cause of action against Defendant, Plaintiffs state as follows:

### INTRODUCTION

1. This is a Telephone Consumer Protection Act case, 47 U.S.C. §227 et seq., against Everalbum, Inc. which seeks to secure redress for improper telemarketing to Plaintiffs' cell phones, including text messages.

2. Plaintiffs seek damages for themselves and a class and an order enjoining future illegal telemarketing activity.

## VENUE AND JURSIDICTION

3. This Court has jurisdiction under 28 U.S.C. §§1331 and 1337.

4. Venue and personal jurisdiction in this District are proper because Defendant is headquartered in this District, conducted business in this District, and a substantial portion of the events that led to this cause occurred within this district.

## PARTIES

5. Plaintiff Gabrielle Figueroa is a natural person who is a citizen and resident of the State of New Jersey.

6. Plaintiff Daisy Franklin is a natural person who is a citizen and resident of the State of Missouri.

7. Defendant Everalbum, Inc. is a corporation organized and existing under the laws of the State of Delaware, registered in the State of California, with its corporate headquarters located in San Francisco, California.

## THE TELEPHONE CONSUMER PROTECTION ACT

8. Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et. seq.* ("TCPA") in response to a growing number of consumer complaints regarding certain telemarketing practices.

9. Consistent with its purpose, the TCPA regulates, among other things, the use of text of "SMS" messaging. The TCPA was designed to prevent calls like the ones described within this Complaint and to protect the privacy of citizens.

10. "Voluminous consumer complaints about abuses of telephone technology…prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012).

11. Congress found that, except in "emergency situations" or where the receiving party consents to such calls, "banning…automated or prerecorded telephone calls…is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* At §12; *see also Martin v. Leading Edge Recovery Solutions, LLC,* 2012 WL 3292838at*4 (N.D. Ill. Aug. 10, 2012)(citing Congressional findings on TCPA's purpose); *Lardner v. Diversified Consultants, Inc.*, 17 F.Supp.3d 1215 (S.D. Fla. 2014).

12. Specifically, Congress found that "the evidence presented to Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…" *Id.* at §§12-13. *See also, Mims,* 132 S. Ct. at 744.

13. Relevant to the present case, the FFC issued a declaratory opinion in July of 2015 confirming, among other things, that (1)simply being on an acquaintance's contact list does not amount to consent to robocalls from third-party applications downloaded by the acquaintance; (2)internet-to-phone text messages require consumer consent; and (3) text messages are "calls" subject to the TCPA, reaffirming a previous declaratory opinion. <u>Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 30 F.C.C. Red 7961(2015) para. 2.

14. Additionally, the FCC issued a declaratory order in 2003 that clarified that messages that serve a "dual purpose," i.e. both informational and marketing, are considered telemarketing messages for the purposes of the TCPA. <u>Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 18 F.C.C. Red 14415(2003).

15. Internet-to-phone text messaging is functionally equivalent to phone-to-phone text messaging, which the FCC has already confirmed falls within the TCPA's protection. And the potential harm is identical to consumers; unwanted text messages pose the same

cost and annoyance to consumers, regardless of whether they originate from a phone or the Internet. <u>Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 30 F.C.C. Red 7961(2015).

## FACTS

16. Defendant, Everalbum, Inc., was founded in 2013 and incorporated in the State of Delaware on or around October 25th, 2013 and later registered in the State of California on or around July 31st, 2014.

17. Everalbum, Inc. was co-founded by, including but not limited to, Josh Miller, Jack Abraham, Andrew Dudum, Don Holly, Charlie Melbye, and Jon Mumm.

18. The Everalbum, Inc. co-founders have an extensive knowledge and background in the technology industry.

19. Defendant offers consumers the ability to free up space on their Apple or Android devices by uploading their photos and videos to its cloud storage service and allows users to edit and share their photos and videos through its application called "Everalbum" or "Ever".

20. Defendant has created several modifications to its application since its inception.

21. Defendant promotes its product, the application, by internet advertising and other media, including the use of text messages.

22. Wireless spam, or text message advertising, is a continuing problem that is growing in the United States, and often comes in the format of unwanted text messages directed to a user's cell phones, including coupons and advertisements.  According to at least one source, "57% of adults with cell phones have received unwanted or spam text messages on their phone." (Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Few Research Center (2010), see

http://pewinternet.orgReports/2010/Cell-Phones-and-American-Adults.aspx.

23. In an effort to promote the download and purchase of its product, Defendant caused to be transmitted to Plaintiffs and other consumers unauthorized text messages advertising the Defendant's goods.

24. Transmission of such text messages by Defendant is effectuated by broadcasting such messages to a large group of consumers through means of a Short Message Service, or "SMS" or similar device that alerts the recipient that a message has been received, typically by causing the recipients phone to ring or activate thereby alerting the consumer that a message or call has been received.

25. The unauthorized text messages appear to be an acquaintance of the consumer trying to share pictures with the consumer and contains a link to download Defendant's application to view said pictures.

26. It is in the downloading process that Defendant obtains access to the consumer's contact list.

27. In prior versions, Defendant used the consumer's contact list to send out the unauthorized text messages without the consumer's knowledge or consent.

28. In later versions, the Defendant enticed the consumers in its downloading process to permit Defendant to send invitations to the consumers' contacts by offering free enhanced services on its application, including but not limited to 1000GB of photo storage.

29. However, at all times relevant herein, the language of the text was created and/or modified by Defendant.

30. At all times relevant herein, the platform used to send the texts were owned and/or controlled by the Defendant and at no time did Defendant warn the consumers that their

actions violated the TCPA.

31. At best, the downloading process is intentionally misleading and confusing and does not fully inform the consumer of the actions or intent of Defendants to use the consumer's contact list to promote its application via the unauthorized text messages at issue in this case.

32. As of September 9th, 2016 (according to GooglePlay) the Everalbum application had been installed in excess of 1,000,000 times and flagged as inappropriate due to numerous consumer complaints concerning receipt of unauthorized text messages.

33. In the latter part of 2016, the Apple Itunes App Store removed the Defendant's app from its store after receiving thousands of complaints from users. [1]

34. It was only after Apple took such action that Defendant modified its application to remove the spam text feature. However, by that time, Defendant had sent hundreds of thousands, if not millions, of spam text messages through unsuspecting users of its app in violation of the TCPA which permitted it to quickly expand its business.

## Principal – Agent Relationship

35. At all times relevant herein, Defendant utilized consumers who downloaded its application as its agents for purposes of sending unauthorized text messages in violation of the TCPA.

36. Defendant Everalbum, Inc. has complete control over the content of the text message, whether a text message will be sent, and the manner in which a text message will be sent.

37. In several cases, users have specifically selected to not invite their contacts or share their contact information with Defendant, and, yet, Defendant caused a message to be sent.

---

[1] See https://techcrunch.com/2016/11/01/photo-app-ever-removed-its-spammy-sms-feature-after-apple-banned-it/.

38. Defendant Everalbum, Inc. has revised its application on several occasions and in prior occasions did not provide users with the selection process and invitation process it now currently offers.

39. In an effort to insulate itself from liability under the TCPA, Defendant changed its application to make it appear as if the application users themselves were the senders or makers of the text messages.

40. Defendant did so by offering valuable incentives to app users in exchange for agreeing to be utilized as Defendant's agents for purposes of sending invitation text messages to cellular numbers on the app users' contact lists for which neither Defendant nor the app user had permission.

41. However, the Defendant offers the platform service and has knowingly allowed its' application users to use the platform in a manner which violates the TCPA.

42. In addition, Everalbum, Inc. continues to be solely responsible for utilizing its platform to send out its marketing texts, directs what the text will say and when and/or if it is sent, controls the finances of the project, encourages the advertisement, encourages application users to participate, and determines the phone number(s) from which is appears the text(s) are sent.

43. Application users are unaware that they are being used as pawns by Defendant in an attempt by Defendant to insulate itself from TCPA violations.

44. Defendant's violations were willful, or in the alternative, such actions were knowing.

### Plaintiff Gabrielle Figueroa

45. Plaintiff Gabrielle Figueroa received an advertising text message on October 27th, 2016 at 11:02 a.m. on her cellular telephone that stated the following:

"Kathie Rose just recommended you check out your photos on Ever. Link expires tomorrow: Tap to Load Preview" (Exhibit A)

46. At no time did Plaintiff Gabrielle Figueroa provide consent to Defendant or Defendant's agent, Kathie Rose, to receive Defendant's marketing text message.

47. Plaintiff Figueroa clicked on the link sent via text message, as she believed that the text message had come from her friend and/or her friend's wedding photographer.

48. Upon following the link, Plaintiff Figueroa quickly discovered that her friend and/or her friend's wedding photographer did not intend to share pictures with her.

49. Upon information and belief, Kathie Rose received a similar text, clicked the link, and completed the download to view the pictures she believed came from a friend of hers, Everalbum sent the above text message to Ms. Rose's contacts whom are preselected and chosen randomly by Everalbum and which included Plaintiff Figueroa.

50. Once the link was followed, the "Onboarding" process allowed Defendant to obtain access to all of Ms. Rose's contacts and to send text messages to any and all such contacts without the permission or consent of the recipient.

51. At no time did Plaintiff Figueroa consent to receive such text message from Defendant or Defendant's agent.

52. The Defendant sent, or caused to be sent via its agent, a text message to Plaintiff Figueroa from a telephone number not owned by Ms. Rose (617-936-7874).

53. Said text message was an advertisement because it was material advertising the commercial availability or quality of any property, goods, or services, i.e. the Everalbum application. 47 C.F.R. §64.1200(f)(1).

54. The text message was a telemarketing call because it was a call or message for the purpose

of encouraging the purchase or rental of or investment in property, goods, or services, i.e. the Everalbum application, which is transmitted to any person.  47 C.F.R. §64.1200(f)(12).

55. The text message, described above, was unsolicited and unexpected by Plaintiff.  Plaintiff, prior to the receipt of the text message, had not provided any consent to receive the autodialed text message to her mobile phone.

56. Through this conduct, Defendant (1) initiated, or caused to be initiated, a call, as construed by the TCPA, to Plaintiff's cellular telephone regarding an unsolicited service via an "automatic telephone dialing system" ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) and prohibited by 47 U.S.C. §227(b)(1)(A) and (2).

57. The text message that Defendant initiated, or caused to be initiated, to Plaintiff's cellular telephone includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system and made without the prior express written consent of the called party. 47 CFR §64.1200(a)(2).

58. The text message delivered to Plaintiff was sent via an automatic telephone dialing system as the term is defined by the TCPA and interpreted by the FCC.

59. The equipment employed by Defendant to send the text message was an automatic telephone dialing system (ATDS) in that the equipment used has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.  47 C.F.R. §64.1200(f)(2).

60. The unsolicited text message constituted an invasion of privacy as has been recognized by courts throughout the United States. *See, e.g., Palm Beach Golf Center-Boca v. John G. Sarris, D.D.S., P.A.,* 781 F.3d 1245 (11th Cir.2015).

61. The text message also constituted a concrete harm in that it drained and depleted

Plaintiff's cell phone battery life, a harm recognized by courts throughout the United States. *See, e.g., Mey v. Got Warranty,* 2016 U.S. Dist. LEXIS 84972 (N.D. W.V. June 30, 2016)("In addition, all ATDS calls deplete a cell phone's battery, and the cost of electricity to recharge the phone is also a tangible harm.  While certainly small, the cost is real, and the cumulative effect could be consequential.")

62. The text message was not for emergency purposes as defined by 47 U.S.C. §227(b)(1)(A)(i), and for which Defendant did not receive prior, express consent, pursuant to 47 U.S.C.§227(b)(1)(A).

63. The text message constituted a telemarketing and/or advertising call for which Defendant was required to, but did not, obtain prior, written, express consent as a condition precedent to initiating the text message.  As a result, Defendant, directly or through its agents as described above, violated 47 U.S.C. §227(b)(1) and (2) and 47 C.F.R. §64.1200(a)(2).

### **Plaintiff Daisy Franklin**

64. Plaintiff Daisy Franklin received an advertising text message on October 22nd, 2016 at 6:18 p.m. on her cellular telephone that stated the following:

    "Dana Kirksey just recommended you check out your photos on Ever. Click here: Tap to Load Preview"  (Exhibit B)

65. At no time did Plaintiff Daisy Franklin provide consent to Defendant or Defendant's agent, Dana Kirksey, to receive Defendant's marketing text message.

66. Plaintiff Franklin clicked on the link sent via text message, as she believed that the text message had come from her friend.

67. Upon following the link, Plaintiff Franklin quickly discovered that her friend did not intend to share pictures with her.   Plaintiff Franklin contacted Dana Kirksey who

confirmed that she had not intended to send Plaintiff Franklin a link.

68. Upon information and belief, Dana Kirksey received a similar text, clicked the link, and completed the download to view the pictures she believed came from a friend of hers, Everalbum sent the above text message to Ms. Kirksey's contacts whom are preselected and chosen randomly by Everalbum and which included Plaintiff Franklin.

69. Once the link was followed, the "Onboarding" process allowed Defendant to obtain access to all of Ms. Kirksey's contacts and to send text messages to any and all such contacts without the permission or consent of the recipient.

70. At no time did Plaintiff Franklin consent to receive such text message from Defendant or Defendant's agent.

71. The Defendant sent, or caused to be sent via its agent, a text message to Plaintiff Franklin from a telephone number not owned by Ms. Kirksey(314-325-0993).

72. Plaintiff Daisy Franklin received an additional advertising text message on October 23rd, 2016 at 9:05 p.m. on her cellular telephone that stated the following:

"Elatris Van Hook just recommended you check out your photos on Ever. Link expires tomorrow: Tap to Load Preview"  (Exhibit B)

73. At no time did Plaintiff Daisy Franklin provide consent to Defendant or Defendant's agent, Elatris Van Hook, to receive Defendant's marketing text message.

74. Plaintiff Franklin clicked on the link sent via text message, as she believed that the text message had come from her friend.

75. Upon following the link, Plaintiff Franklin quickly discovered that her friend did not intend to share pictures with her.   Plaintiff Franklin contacted Elatris Van Hook who confirmed that he had not intended to send Plaintiff Franklin a link.

76. Upon information and belief, Elatris Van Hook received a similar text, clicked the link, and completed the download to view the pictures he believed came from a friend of his, Everalbum sent the above text message to Mr. Van Hook's contacts whom are preselected and chosen randomly by Everalbum and which included Plaintiff Franklin.

77. Once the link was followed, the "Onboarding" process allowed Defendant to obtain access to all of Mr. Van Hook's contacts and to send text messages to any and all such contacts without the permission or consent of the recipient.

78. At no time did Plaintiff Franklin consent to receive such text message from Defendant or Defendant's agent.

79. The Defendant sent, or caused to be sent via its agent, a text message to Plaintiff Franklin from a telephone number not owned by Mr. Van Hook (314-325-0993).

80. Said text messages were an advertisement because it was material advertising the commercial availability or quality of any property, goods, or services, i.e. the Everalbum application. 47 C.F.R. §64.1200(f)(1).

81. The text messages were a telemarketing call because it was a call or message for the purpose of encouraging the purchase or rental of or investment in property, goods, or services, i.e. the Everalbum application, which is transmitted to any person.  47 C.F.R. §64.1200(f)(12).

82. The text messages, described above, were unsolicited and unexpected by Plaintiff. Plaintiff, prior to the receipt of the text messages, had not provided any consent to receive the autodialed text messages to her mobile phone.

83. Through this conduct, Defendant (1) initiated, or caused to be initiated, a call, as construed by the TCPA, to Plaintiff's cellular telephone regarding an unsolicited service via an

"automatic telephone dialing system" ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) and prohibited by 47 U.S.C. §227(b)(1)(A) and (2).

84. The text messages that Defendant initiated, or caused to be initiated, to Plaintiff's cellular telephone includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system and made without the prior express written consent of the called party. 47 CFR §64.1200(a)(2).

85. The text messages delivered to Plaintiff was sent via an automatic telephone dialing system as the term is defined by the TCPA and interpreted by the FCC.

86. The equipment employed by Defendant to send the text messages was an automatic telephone dialing system (ATDS) in that the equipment used has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. 47 C.F.R. §64.1200(f)(2).

87. The unsolicited text messages constituted an invasion of privacy as has been recognized by courts throughout the United States. *See, e.g., Palm Beach Golf Center-Boca v. John G. Sarris, D.D.S., P.A.,* 781 F.3d 1245 (11th Cir.2015).

88. The text messages also constituted a concrete harm in that it drained and depleted Plaintiff's cell phone battery life, a harm recognized by courts throughout the United States. *See, e.g., Mey v. Got Warranty,* 2016 U.S. Dist. LEXIS 84972 (N.D. W.V. June 30, 2016)("In addition, all ATDS calls deplete a cell phone's battery, and the cost of electricity to recharge the phone is also a tangible harm. While certainly small, the cost is real, and the cumulative effect could be consequential.")

89. The text messages were not for emergency purposes as defined by 47 U.S.C. §227(b)(1)(A)(i), and for which Defendant did not receive prior, express consent, pursuant

to 47 U.S.C.§227(b)(1)(A).

90. The text messages constituted a telemarketing and/or advertising call for which Defendant was required to, but did not, obtain prior, written, express consent as a condition precedent to initiating the text message. As a result, Defendant, directly or through its agents as described above, violated 47 U.S.C. §227(b)(1) and (2) and 47 C.F.R. §64.1200(a)(2).

## CAUSE OF ACTION

### (Violation of 47 U.S.C. . § 227-Telephone Consumer Protection Act)

91. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

92. Defendant made unsolicited commercial text calls, including the messages transcribed above, to the wireless telephone numbers of the Class. Each such text message call was made using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to effectively send text messages simultaneously to lists of thousands of wireless telephone numbers without human intervention.

93. These text calls were made *en masse* and without the prior express consent of the Plaintiffs and the other members of the Class.

94. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's illegal conduct, the members of the class suffered actual damages by, *inter alia*, having to pay their respective wireless carriers for the text messages where applicable and, under section 227(b)(3)(B), are each entitled to, *inter alia,* a minimum of $500.00 in damages for each violation of such act.

95. Because Defendant had knowledge that Plaintiffs and the Class did not consent to the receipt of the aforementioned wireless spam, the Court should, pursuant to section 47

U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiffs and the other members of the Class.

## CLASS ALLEGATIONS

96. Plaintiffs bring this claim on behalf of a class defined as follows:

    All persons within the United States who received one or more text message(s) from Everalbum, Inc. on or after April 26th, 2013.

97. The class is so numerous that joinder of all members is impractical. Upon information and belief, Plaintiffs allege that there are more than one thousand (1,000) members of the class.

98. There are questions of law and fact common to the class which predominate any questions affecting an individual class member. The predominate common questions include:

    a. Whether Defendant utilized and automatic dialing system as defined within the TCPA and applicable FCC regulations in order to send the text messages at issue; and

    b. The amount of damages, including whether Defendant's violations were negligent, willful or knowing.

99. Plaintiffs will fairly and adequately protect the interest of the class. Plaintiffs have retained counsel experienced in handling class actions and other complex civil litigation. Neither Plaintiffs nor Plaintiffs' counsel have any interests which might cause them not to vigorously pursue this action.

100. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims is small because it is not economically feasible to bring individual actions.

101. Class action treatment is superior to the alternatives for fair and efficient adjudication of

the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously and without duplication of effort and expense that numerous individual actions would entail.

102. Defendant has acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole.  Prosecution of separate actions by individual members of the class would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

WHEREFORE, Plaintiffs Gabrielle Figueroa and Daisy Franklin, on behalf of themselves and the Class, prays for the following relief:

A.  An order certifying the Class as defined above;

B.  An award of actual and statutory damages;

C.  An injunction requiring Defendant to cease all wireless spam activities;

D.  An award of reasonable attorneys' fees and costs; and

E.  Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs demand trial by jury.

Respectfully submitted,

 /s/ Steve A. Miller
STEVE A. MILLER  (CA Bar #171815)
1625 Larimer Street, No. 2905
Denver, CO  80202
Ph# (303)892-9933
Fax:  (303)892-8925
Email:  sampc01@gmail.com
Attorney for Plaintiffs